Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Attorney for Plaintiff and the Proposed Class

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## EUGENE DIVISION

| | | |
|---|---|---|
| CHET MICHAEL WILSON, individually and on behalf of all others similarly situated, | : | CIVIL ACTION FILE NO. |
| | : | 6:25-cv-1703 |
| Plaintiff, | : | |
| | : | |
| v. | : | PLAINTIFF'S OPPOSITION TO THE |
| | : | DEFENDANT'S MOTION TO DISMISS |
| TPH PARALEGAL PROFESSIONAL | : | TCPA (47 U.S.C. § 227) |
| CORPORATION D/B/A TPH LEGAL | : | DEMAND FOR JURY TRIAL |
| SERVICES | : | |
| | : | |
| Defendant. | : | |

_____/

## PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS

## INTRODUCTION

Defendant's Motion to Dismiss and/or Strike is an effort to avoid answering for a straightforward violation of the TCPA by recasting factual disputes as pleading deficiencies and by attacking the very tools Congress envisioned for enforcing the statute. The Complaint alleges that Defendant, a Canadian calling outfit, placed a call on July 15, 2025, to Plaintiff's Oregon cellular telephone number, using an artificial or prerecorded voice, without Plaintiff's consent. Plaintiff had no relationship with Defendant, never provided his number, and received a generic, robotic message that plainly bore the hallmarks of a prerecorded voice. Those factual allegations are specific, detailed, and more than sufficient under Rule 8.

On personal jurisdiction, Defendant asks this Court to disregard decades of authority holding that a defendant purposefully directs its conduct at a forum when it initiates telephonic communications into that forum. Plaintiff's claim arises directly out of that Oregon-directed conduct to an Oregon area code. Defendant cannot evade jurisdiction by unilaterally labeling the call a "mistake." Nothing in the jurisdictional case law permits a foreign telemarketer to insulate itself from United States courts simply by asserting after the fact that it dialed the wrong person.

On the merits, Defendant's Rule 12(b)(6) arguments fare no better. Plaintiff alleges the date, the numbers involved, the prerecorded nature of the message, the content of the message itself, and the absence of any consent or prior relationship. Courts across the country hold that describing the experience of receiving a prerecorded or artificial voice is sufficient at the pleading stage; consumers are not required to reverse-engineer the technology used against them before discovery. Defendant's attempt to convert a factual dispute about how the message sounded into a basis for dismissal is improper.

Finally, Defendant's challenges to the class allegations and to Mr. Wilson's adequacy as class representative are premature and legally unsupported. Rule 12(f) motions to strike class allegations are disfavored and rarely granted before discovery, particularly in TCPA cases where classwide conduct and common evidence (such as call logs and dialing records) are central. Defendant's assertion that Mr. Wilson cannot represent the class because his telephone number ends in repeated digits is unprecedented and irrelevant to Rule 23. The TCPA protects all cellular subscribers alike, regardless of how unusual or memorable their numbers may be. Mr. Wilson alleges the same type of prerecorded call, arising from the same course of conduct, and seeks the same relief as the class. Adequacy and typicality are plainly met.

For all of these reasons, and those set forth more fully below, the Court should deny Defendant's Motion to Dismiss and/or Strike in its entirety.

## BACKGROUND

Plaintiff is an Oregon resident and the long-time subscriber of his cellular telephone number 541-XXX-9999. (ECF No. 1 ¶¶ 1, 9). 541 is an Oregon area-code. On July 15, 2025, Defendant placed a call to Plaintiff's cellular phone from 1-888-863-9798. (Id. ¶¶ 10–13). Plaintiff alleges this call was intended for someone else because Plaintiff had no account or relationship with Defendant and never provided his number to Defendant. (Id. ¶¶ 17–21). Defendant used an artificial or prerecorded voice to deliver a short, robotic message. (Id. ¶¶ 14–16). Plaintiff listened to the message, recognized it as prerecorded due to its pattern, tone, and cadence, and suffered nuisance, privacy invasion, and other recognized harms under the TCPA. (Id. ¶¶ 15–16, 22–23, 39–48).

Plaintiff also submits a sworn declaration, which confirms the factual allegations in the Complaint. Plaintiff declares that he is an Oregon resident and has been the subscriber and

customary user of the cellular telephone number ending in 9999 for more than five years. *See* Exhibit 1. He further declares that he uses this number daily as his personal cell phone, has never used it for any business purpose, and has never authorized any other person or entity to use it as a dummy or fake number. *Id.* Plaintiff also confirms that he had never heard of Defendant before receiving the call, had never provided his number to Defendant, and had never consented to receive any calls from Defendant. *Id.* He attests that he answered the July 15, 2025 call in Oregon, heard no live caller, and instead received a short, generic, robotic message. *Id.*

## ARGUMENT

### I.     Specific Jurisdiction Exists Because Defendant Purposefully Directed Conduct Toward Oregon and the Claim Arises from That Conduct

Specific personal jurisdiction is proper because Defendant purposefully directed its conduct toward Oregon, Plaintiff's claim arises directly from that conduct, and the exercise of jurisdiction is reasonable under due process standards. Defendant attempts to avoid jurisdiction by labeling its conduct as an "accident," but such assertions cannot defeat jurisdictional allegations. As courts applying the TCPA have consistently held, initiating a telephonic communication to a resident of the forum is a paradigmatic example of purposeful direction.

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff "bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). To withstand a motion to dismiss, the plaintiff "need make only a prima facie showing of jurisdictional facts." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). "When considering a motion to dismiss for lack of personal jurisdiction, courts are not confined to the plaintiff's complaint; it is appropriate to consider evidence such as party declarations." *Valli v. EMI Music Publ'g Ltd.*, No. CV 17-7831-MWF (JCx), 2018 WL 6136818, at *3 (C.D. Cal. May 22, 2018). Conflicts between statements in affidavits must be resolved in the plaintiff's favor,

just as all "draw reasonable inferences from the complaint." *Fiore v. Walden*, 688 F.3d 558, 575 (9th Cir. 2012), *rev'd on other grounds*, 571 U.S. 277 (2014).

The defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945). The Ninth Circuit requires the following to establish minimum contacts:

> (1) [t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*See Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004)*.* The plaintiff bears the burden of satisfying the first two prongs of the test. *Id.* The burden then shifts to the defendant to show that jurisdiction would not be reasonable. *Id.*

The Ninth Circuit's first prong requires purposeful direction or purposeful availment. Courts "generally apply the purposeful availment test when the underlying claims arise from a contract, and the purposeful direction test when they arise from alleged tortious conduct." *Schwarzenegger*, 374 F.3d at 802. "Claims for violation of the TCPA sound squarely in tort and require application of the purposeful direction analysis." *Born v. Celtic Mktg. LLC*, No. 8:19-cv-01950-JLS-ADS, 2020 WL 3883273, at *3 (C.D. Cal. May 20, 2020).

Courts evaluate purposeful direction under a three-part "effects" test. *Schwarzenegger*, 374 F.3d at 803 (citing *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)). Under this test, a defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum

state." 374 F.3d at 803 (citation omitted). In context of the TCPA, the "intentional act" prohibited by statute is "[making] any call (other than a call made for emergency purposes or made with the express prior consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

Under a theory of direct liability, the allegation that Defendants made phone calls to Plaintiff's Oregon number in violation of the TCPA satisfies the purposeful direction the purposeful direction test because the Court can reasonably infer that Defendant (1) intentionally called a number with a Oregon area code, (2) expected to reach someone in Oregon by calling a Oregon number, and (3) caused harm likely to be suffered in Oregon by calling Plaintiff's Oregon number in violation of the TCPA. *See Ewing v. McCarthy*, No. 3:17-cv-01554-GPC-RBB, 2017 WL 4810098, at *3 (S.D. Cal. Oct. 25, 2017); *see also Luna v. Shac, LLC*, No. C14-00607-HRL, 2014 WL 3421514, at *4 (N.D. Cal. July 14, 2014) (finding that TCPA violations satisfied effects test and citing supporting cases).

Plaintiff's sworn declaration also directly supports the Court's exercise of specific jurisdiction. Plaintiff declares that he was physically present in Oregon when he received the July 15, 2025 call, that the call displayed the number 1-888-863-9798, and that he answered it on his Oregon-based cellular line. *See* <u>Exhibit 1.</u> He further attests that he has used the 541 number exclusively in Oregon for years, pays for the service in Oregon, and has never relocated the number to any other state. *Id.* These sworn facts confirm that Defendant's prerecorded message was delivered into Oregon, to an Oregon resident, at an Oregon cellular telephone, and that the harm occurred in Oregon—squarely satisfying the "effects" test for purposeful direction. *Id.*

To assess satisfaction of the second specific jurisdiction prong (that the plaintiff's claim arises out of the defendant's forum-related conduct), the Ninth Circuit looks to whether the plaintiff "would not have suffered an injury 'but for' [defendant's] forum related conduct." *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001). Here, but for Defendant's alleged contact with Plaintiff in violation of the TCPA, Plaintiff would not have a TCPA claim against Defendants. *See Sasin v. Enter. Fin. Grp., Inc.*, No. CV 17-4022-CBM-RAO, 2017 WL 10574367, at *4 (C.D. Cal. Nov. 21, 2017) (finding an out-of-state defendant's contacts with the forum state in violation of the TCPA to be sufficient for the "but for" test); *Heidorn v. BDD Mktg. & Mgmt. Co, LLC*, No. C-13-00229 JCS, 2013 WL 6571629, at *8 (N.D. Cal. Aug. 19, 2013) (same); *j2 Global Communs., Inc. v. Blue Jay, Inc.*, No. C 08-4254 PJH, 2009 WL 29905, at *10 (N.D. Cal. Jan. 5, 2009) (same).

When the first two inquiries in the personal jurisdiction analysis have been satisfied, the burden shifts to defendants to show that jurisdiction would be unreasonable. *Schwarzenegger*, 374 F.3d at 802. Defendants bear a "heavy burden" of overcoming this presumption. *Ballard*, 65 F.3d at 1500. To determine the reasonableness of litigating in the forum state, courts consider:

> [1] the extent of the purposeful interjection into the forum state, [2] the burden on the defendant of defending in the forum, [3] the extent of conflict with the sovereignty of defendant's state, [4] the forum state's interest in adjudicating the dispute, [5] the most efficient judicial resolution of the controversy, [6] the importance of the forum to plaintiff's interest in convenient and effective relief, and [7] the existence of an alternative forum.

*Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1270 (9th Cir. 1981) (citations omitted). The Defendant claims it is unreasonable to require it defend itself in Oregon when it claims the call was just a "mistake." However, "with the advances in transportation and telecommunications and the increasing interstate practice of law, any burden is substantially less than in days past." *See CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir.

2004). Additionally, Oregon has a strong interest in providing an effective forum to its residents to litigate harms caused by unlawful violations of the TCPA. The viable alternative forum also doesn't appear to sensibly exist because the Defendant is based in Canada. Additionally, Plaintiff has an interest in litigating in Oregon. *Id.* ("Litigating in one's home forum is obviously most convenient[,] . . . however, . . . this factor is 'not of paramount importance.'") (quoting *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1133 (9th Cir. 2003)).

Because Defendant has not overcome its high burden to show unreasonableness, the *Schwarzenegger* factors weigh in favor of California as a reasonable forum to litigate the alleged TCPA violations. *See j2 Global*, 2009 WL 29905, at *10 (finding that specific jurisdiction over out-of-state defendant's alleged TCPA violation in California was not unreasonable); *Heidorn*, 2013 WL 6571629, at *8 (same). Every element of the Ninth Circuit's specific-jurisdiction test is satisfied, and Defendant's contrary assertions rely on factual disputes.

## II.    The Plaintiff Plausibly Alleges the Use of a Pre-Recorded Voice.

"The TCPA prohibits the use of certain communication practices that intrude upon consumers' privacy." *Worley v. Mun. Collections of America, Inc.*, JZL-14-2418, 2015 WL 890878, at *3 (N.D. Ill. Feb. 27, 2015) (citing *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 371 (2012)). "Among other things, the TCPA generally makes it illegal to place what are colloquially known as 'robocalls' to someone's home phone or cell phone, subject to differing rules depending on which type of phone number is called." *Loyhayem v. Fraser Fin. & Ins. Servs., Inc.*, 7 F.4th 1232, 1233 (9th Cir. 2021). Under the TCPA, it is unlawful "for any person ... to make any call [other than for emergencies or with the recipient's prior express consent] using … an artificial or prerecorded voice" to a cell phone. 47 U.S.C. § 227(b)(1)(A)(iii). The

TCPA does not define the term "artificial or prerecorded voice." *Mina v. Red Robin Int'l, Inc.*, No. 20-CV-00612-RM-NYW, 2022 WL 2105897, at *7 (D. Colo. June 10, 2022).

"A TCPA claim survives a motion to dismiss if the plaintiff describe[s] anything about the circumstances of a call or message contributing to [her] belief it was pre-recorded." *Slominski v. Globe Life Inc.,* 2024 U.S. Dist. LEXIS 24378, *16 (E.D.N.C.). Indeed, "Courts have denied motions to dismiss in cases brought under the TCPA in which plaintiffs have alleged that they received prerecorded calls and that the contents of the call were identical." *Rose v. New Tsi Holdings, Inc.*, No. 21-CV-5519 (JPO), 2022 WL 912967, at *2 (S.D.N.Y. Mar. 28, 2022) (citing *Dendy v. Chartrand*, No. 18-CV-1118-WPJ, 2019 WL 719762, at *3 (D.N.M. Feb. 20, 2019) (denying motion to dismiss because the calls "contained the same message")).

A plaintiff sufficiently pleads a prerecorded message claim under the TCPA when the allegations supply details beyond bare legal conclusions or the recitation of statutory language, such as the frequency of the calls and their content. *Evans v. Nat'l Auto Div., L.L.C.*, No. 15-8714, 2016 U.S. Dist. LEXIS 29348, at *4-5 (D.N.J. Mar. 7, 2016). Courts have recognized the following averments to be indicative of a prerecorded call: "1) a delay before hearing the message, 2) calls ending with a beep, 3) instructions to call a 1-800 number, 4) an unusual phone number or short code instead, 5) a robotic voice on the other end, or 6) the absence of anything specific to the person being called." *Smith v. Am.-Amicable Life Ins. Co. of Texas*, No. CV 22-333, 2022 WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022); *see also Smith v. Pro Custom Solar LLC*, No. CV1920673KMESK, 2021 WL 141336, at *2-3 (D.N.J. Jan. 15, 2021).

Here, Plaintiff's Complaint contains detailed and explicit factual allegations describing the prerecorded nature of the message he received. Plaintiff alleges that it "used an artificial or prerecorded voice." (ECF No. 1 ¶¶ 10–14). Plaintiff quotes the message verbatim, alleging that

"the voice message stated, 'zero, two.'" (*Id.* ¶ 14). He further alleges that Defendant's "voice message was generic and robotic," and that "the content, pattern, and tone of the speech made clear to Plaintiff that the message Defendant played was prerecorded in nature." (*Id.* ¶¶ 15–16). Plaintiff also alleges that he "listened to the voice message Defendant delivered to his cellular telephone" and personally perceived its prerecorded characteristics. (*Id.* ¶ 22). Taken as a whole, these allegations describe the precise auditory qualities that federal courts have repeatedly recognized as sufficient to plausibly allege a prerecorded voice at the pleadings stage.

The cases relied upon by the Defendant are inapposite. First, the Defendant relies on *Metzler v. Pure Energy USA LLC,* 2023 WL 1779631 (S.D.N.Y. Feb. 6, 2023). However, in that case plaintiff "merely alleged that he received a ringless voicemail, which he was easily able to determine . . . was a prerecorded message.". *Id.* at *14. The *Metzler* Court criticized the plaintiff in that action because he did "not allege, for example, that the voice in the message sounded artificial, nor does he allege having received multiple messages that sounded identical." *Id.* Here, the Plaintiff has plainly alleged that the message sounded artificial. Next, the Defendant relies on *Hicks v. Alarm.com Inc.,* 2020 U.S. Dist. LEXIS 157433, *11 (E.D. Va.), but in that case, the prerecorded message named a different company entirely, which is not the case here.

Defendant relies on cases in which plaintiffs failed to allege any facts about the content or nature of the call, unlike here. Those cases involved plaintiffs who did not answer the phone or who alleged only that the "call was prerecorded," without explaining what they heard or why they believed that to be true. Courts in those situations dismissed because the complaints offered zero descriptive facts. Here, by contrast, Plaintiff alleges that he listened to the message and personally observed that it was robotic, generic, and mechanically delivered, allegations that courts repeatedly treat as sufficient. The Defendant is also simply wrong as a matter of law that a

recorded voicemail does not violate the TCPA. *Susinno v. Work Out World Inc.*, 862 F.3d 346, 348 (3d Cir. 2017) (holding prerecorded voicemails violate the TCPA and constitute a concrete harm because they clog mailboxes); *Wakefield v. ViSalus, Inc.*, No. 3:15-CV-1857-SI, 2019 WL 3945243, at *8 (D. Or. Aug. 21, 2019) (same).

At bottom, the Plaintiff has detailed yet straightforward allegations for a straightforward proposition: the calls to him were robocalls, made with a prerecorded voice. "When one receives a call, it is a clear-cut fact, easily discernible to any lay person, whether or not the recipient is speaking to a live human being, or is instead being subjected to a prerecorded message." *Rahn v. Bank of Am., N.A.*, No. 1:15-CV-4485-ODE-JSA, 2016 WL 7325657, at *4 (N.D. Ga. June 24, 2016). The Plaintiff has alleged as much and his claim should proceed to discovery.

### III.   The Defendant's Attack on the Class Allegations are Premature at best, and Legally Incorrect in Other Instances.

As Judge Easterbrook wrote: "Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013); *accord Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 656 (4th Cir. 2019) ("Given the remedial purpose of the TCPA, it is no surprise that its cause of action would be conducive to class-wide disposition.").[1] And as another Court in this Circuit held:

> Jurists and commentators have long debated the merits of the modern class action and the public policies behind Rule 23…It is the view of this Court that the instant case highlights one of the strongest justifications for the class action device: its regulatory function…A statute such as the TCPA, which provides for a relatively small recovery for individual violations but is designed to deter conduct directed against a large number of individuals, can be effectively enforced only if consumers have available a mechanism that makes it economically feasible to bring their claims. Without the prospect of a class action suit, corporations balancing the costs

---

[1] And this remains true for "wrong or reassigned" number TCPA class actions like this one. *See, e.g.*, *Elliot v. Humana Inc.*, No. 3:22-cv-00329-RGL, 2025 WL 1065755 (W.D. Ky. Apr. 9, 2025) (certifying TCPA class defined nearly identically to here); *Samson v. United Healthcare Servs. Inc.*, No. 2:19-CV-00175, 2023 WL 6793973 (W.D. Wash. Oct. 13, 2023) (same).

and benefits of violating the TCPA are unlikely to be deterred because individual claims will not impose the level of liability that would outweigh the potential benefits of violating the statute.

*Bee, Denning, Inc. v. Capital Alliance Group*, No. 13-cv-2654, 2015 U.S. Dist. LEXIS 129495, at

*37-38 (S.D. Cal. Sept. 24, 2015). As the Fourth Circuit explained:

> In enacting the law, Congress sought to deter an activity that, while pernicious and disruptive, does not trigger extensive liability in any single case. Since few individuals would have an incentive to bring suit, no matter how frustrated they were with the intrusion on their privacy, the TCPA opted for a model that allows for resolution of issues without extensive individual complications.

*Krakauer*, 925 F.3d at 649-50 ("the TCPA clearly supports class-wide resolution").

Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). The purpose of the Rule is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). "[S]uch motions are generally disfavored because the motions may be used as delaying tactics and because of the strong policy favoring resolution on the merits." *Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010). With a motion to strike, the court should view the pleading in the light most favorable to the nonmoving party and deny the motion if there are any doubts. *Id.* Here, the Plaintiff is seeking to certify the following class:

> All persons throughout the United States (1) to whom Defendant placed, or caused to be placed, a call, (2) directed to a number assigned to a cellular telephone service, but not assigned to a person who provided their phone number to the Defendant, (3) in connection with which Defendant used an artificial or prerecorded voice, (4) from four years prior to the filing of this complaint through the date of class certification.

*See* ECF No. 1 at ¶ 28.

Striking class allegations at this stage is rare because "the parties have not yet engaged in discovery and the shape of a class action is often driven by the facts." *In re Wal—Mart Stores,*

*Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615-16 (N.D. Cal. 2007); *see also Olney v. Job.Com, Inc.*, 2013 WL 5476813, *16 (E.D. Cal. Sept. 23, 2013) (denying motion to strike TCPA class); *Thorpe v. Abbott Labs., Inc.*, 534 F. Supp.2d 1120, 1125 (N.D. Cal. 2008) (noting "a motion for class certification is a more appropriate vehicle"). To "strike class allegations at this juncture would be inconsistent with the  type of 'rigorous analysis' that this [c]ourt would endeavor to undertake in deciding whether to ultimately certify a class." *Progressive Health and Rehab Corp. v. Quinn Med., Inc.*, 323 F.R.D. 242, 247 (S.D. Ohio 2017).

Courts in this circuit repeatedly have denied motions to strike class allegations prior to discovery as premature, including in TCPA cases. *See Ahmed v. HSBC Bank USA, N.A.*, 2018 WL 501413, at *1 (C.D. Cal. Jan. 5, 2018) (denying reconsideration of a decision rejecting a motion to strike ); *Brown v. DIRECTV, LLC*, 2014 WL 12599363, at *2 (C.D. Cal. May 27, 2014) (denying motion to strike as premature); *Iniguez v. CBE Group*, 969 F. Supp. 2d 1241, 1248 (E.D. Cal. 2013) (finding sufficiency of TCPA class allegations were better addressed in a motion for class certification); *Hibbs-Rines v. Seagate Techs., LLC*, 2009 WL 513496, at *3 (N.D. Cal. Mar. 2, 2009) (noting that plaintiff "should at least be permitted to conduct some discovery before the Court rules on the propriety of the class allegations").

Similarly, this Court should not hold as a matter of law that a TCPA class is not ascertainable. Indeed, identifying class members in a TCPA case is simply a matter of expert work, as other Courts have found when *certifying* a TCPA case. *See, e.g.*, *Johnson v. Comodo Grp., Inc.,* No. 16-4469 (SDW) (LDW), 2020 U.S. Dist. LEXIS 18033, at *25-27 (D.N.J. Jan. 31, 2020). The Defendant's first argument on ascertainability is that the class is impermissibly fail-safe. A class is not fail-safe if "[m]embership … can be determined without reaching any legal conclusions to determine whether someone is in the class, one simply needs to answer

questions … determined by objective criteria." *Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 WL 3750112, at *8 (N.D. Cal. June 15, 2015) (internal annotations omitted). Contrary to what Defendant argues, to determine class membership in this case, the Court will ask the following series of objective, factual questions:

- Did Defendant make pre-recorded calls?
- Were those numbers "cellular"?
- Does Defendant claim to have obtained consent to call them in the same manner Defendant claims to have obtained consent to call Plaintiff?
- Did the Defendant use the same or similar pre-recorded messages in its calling?

*See id*. at *8-9 (finding that the plaintiff's proposed Class were not fail safe because "one simply needs to answer questions such as whether the person received a certain number of phone calls from Defendant within a certain timeframe").

The Defendant's arguments in support of striking the class allegations prior to discovery are that it will be impossible for the Court to determine if (1) Defendant "placed or caused to be placed" any calls; (2) whether a class member gave prior consent to be contacted by Defendant; and/or (3) the class members that received an artificial or prerecorded voice call. Defendant's argument fails on all three counts. The first contention fails because determining the source of a call is an objective inquiry based on Defendant's own call records, not an individualized merits determination. Federal courts uniformly hold that it is not failsafe to define a class by reference to conduct the defendant objectively performed, as discussed above.

Relatedly, the question of if a call was prerecorded or whether consent existed are not merits questions, either. They are record-based identification questions. Defendant's similar claim that it will be impossible to certify the class because it will be impossibly to identify what individuals were called "on behalf of" Defendant is also premature. Again, it will be discovery that will determine whether any third parties made calls for Defendant, and the contours of the

class definition can be adjusted appropriately. To claim that it is impossible to certify such a class ignores the law that a defendant's potential vicarious liability for telemarketing calls is a common question among class members. *See, e.g.*, *Abante Rooter & Plumbing, Inc. v. Alarm.com, Inc.*, No. 15-cv-6314-YGR, 2017 WL 1806583, at *7 (N.D. Cal. May 5, 2017) (finding whether defendant was vicariously liable for calls made by an third party it contracted with was a common question and certifying). It is also possible that Defendant will not even assert any third parties were involved at all. The Plaintiff's use of "caused to be placed" also addresses the potential scenario that the Defendant, contracted out its calling conduct.

The final argument from the Defendant argument focuses on a *potential* affirmative defense of consent (of which they've produced no evidence) to assert that the action is incapable of being maintained as a class action. In rejecting the same argument, another Court held:

> The Court finds that the defendant's motion to strike the class allegations is premature before plaintiff can develop the factual record through discovery. Loan Depot's citation of consent as a potential affirmative defense is insufficient to warrant striking the putative class solely on the pleadings. The motion to strike class allegations will, therefore, be denied.

*Rosenberg v. LoanDepot.com LLC,* 435 F. Supp. 3d 308, 318 (D. Mass. 2020). Nor does adjudicating consent necessitate thousands of individual mini-trials, as Defendant claims. Courts do not see consent issues as problematic from a class certification perspective, particularly when there are uniform issues with the offered consent evidence. *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 972 (N.D. Cal. 2019), *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 504 (S.D.N.Y. 2014). Currently, the Defendant has offered no evidence of consent, but discovery must reveal how a potential consent defense will impact an eventual class certification analysis.

Indeed, Judge You denied a motion to strike class allegations in another TCPA case where the Defendant had *the same counsel* make similar arguments in *Mattson v. New Penn Fin., LLC*, 2018 U.S. Dist. LEXIS 218627, *6-7 (D. Or.). There, the Court held:

In a nearly identical case, for example, the complaint alleged a single count violation of the TCPA and sought certification of a nationwide class of "all persons who received prerecorded messages without their consent." *Donaca v. Metro. Life Ins. Co.*, 2014 U.S. Dist. LEXIS 198899, 2014 WL 12597152, at \*3 (C.D. Cal. Jan. 22, 2014). Defendant moved to strike the class allegations, contending that the class definition would require the court to make individualized inquiries concerning each putative class member to determine whether the recipient of the call consented. The court denied the motion, finding it premature to determine whether the matter should proceed as a class action. 2014 U.S. Dist. LEXIS 198899, [WL] at \*4. The court recognized that while it may be correct that "consent or other issues will ultimately require an individualized inquiry, . . . there is no way to make that determination now." *Id.* (quoting *Meyer v. Receivables Performance Mgmt., LLC*, 2013 U.S. Dist. LEXIS 65918, 2013 WL 1914392, at \*2 (W.D. Wash. May 8, 2013)). Here, where discovery has not yet revealed how or if the alleged consent was obtained, whether the other putative class members are similarly situated, or what can be ascertained from New Penn's records without an individualized inquiry, this court likewise is not prepared to make a recommendation on the propriety of the class allegations. *See Blair v. CBE Group, Inc.*, 309 F.R.D. 621, 629 (S.D. Cal. 2015) (noting "courts should not simply accept a party's argument that consent requires individualized inquiries without evidence demonstrating consent is, in fact, an individualized issue")…Here, while discovery could show valid consent, it could alternatively yield proof that Mattson's alleged consent or other documented consents were obtained unlawfully…this court is persuaded by the weight of authority in this circuit, as referenced above, which concludes that striking class allegations at this phase is premature.

Next, the Defendant claims that Mr. Wilson could never be a class representative. Its reasoning? Mr. Wilson has filed too many cases alleging a violation of the TCPA and/or Mr. Wilson's telephone number, which is a real telephone number and serviced by Verizon Wireless, is so unique that it means he can never be a class representative. Neither are availing.

Plaintiff's sworn declaration independently confirms his adequacy and typicality under Rule 23. Plaintiff declares that he brought this action to stop Defendant's unlawful prerecorded calling practices, that he understands the responsibilities of serving as a class representative, and that he is willing and able to fulfill those duties. *See* Exhibit 1. He further declares that he seeks the same statutory damages and injunctive relief as every other class member, has no conflicts with the interests of absent class members, and is committed to protecting their rights. *Id.* Plaintiff also attests that he does not operate any business using his number, has never held his

number out as a "dummy" or "fake" number, and has never authorized anyone else to do so. *Id.* These sworn facts directly refute Defendant's speculative assertions regarding Plaintiff's supposed "uniqueness" and demonstrate that Plaintiff's interests are fully aligned with the class's interests.

Defendant's suggestion that Plaintiff's history of filing other TCPA actions prohibits him from being a class representative fails as a matter of law. The attempted use of past litigation to prevent a litigant from pursuing a valid claim in federal court warrants careful scrutiny. *Outley v. New York*, 837 F.2d 587, 591-92 (2d Cir. 1988). "[N]othing in the Constitution, though, requires a plaintiff to be a naïf. Litigation is not college athletics: there is no 'amateurs only' rule." *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) ("What the district judge did not explain, though, is why 'professional [plaintiff]' is a dirty word. It implies experience, if not expertise. The district judge did not cite a single decision supporting the proposition that someone whose rights have been violated by 50 different persons may sue only a subset of the offenders.") (Easterbook, J.); *Abramson v. Oasis Power LLC*, No. 2:18-cv-00479, 2018 U.S. Dist. LEXIS 129090, at *16 (W.D. Pa. July 31, 2018) (same).

Merely because Mr. Wilson is able to identify those who placed calls to him illegally does not deprive him of harm or standing any more "than the purchase of a burglar alarm would indicate that the homeowner wanted her house to be broken into." *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 783 (N.D.W. Va. 2017) (denying motion for summary judgment in TCPA case related to a similar standing argument). While the Defendant is "understandably frustrated" by the fact they are being sued, he is doing "exactly what Congress intended—enforcing the

law." *Id.* Thus, courts reject such irrelevant and dangerous attacks on plaintiffs who bring multiple actions and engage in investigative tactics to stop robocalls:

> The determinative issue, then, is not Cunningham's motivations, but whether he was injured. An ordinary consumer who pled the facts that Cunningham has pled would have established a concrete and particularized injury-in-fact based on the Defendants' intrusion upon his rights to privacy and seclusion. Defendants suggest that, by becoming a so-called "professional plaintiff," he has forfeited those rights because the calls alleged were not truly unwanted. Insofar as Stoops endorses such a result, this Court disagrees. It may be that Cunningham was not saddened or annoyed by the calls he received; it may even be that, knowing his rights under the TCPA, he is glad the calls were placed. But allowing that fact, even if true, to negate his right to privacy and seclusion would require the Court to embrace a line of reasoning that would ultimately undermine the rights of most, if not all, TCPA plaintiffs and plaintiffs in similar statutory schemes.

*Cunningham*, 251 F. Supp. 3d at 1196 (citation omitted) (noting that most people would accept $500 or more in exchange for enduring the privacy violation of a single robocall). Like the defendants in *Cunningham*, Defendant "seem[s] to imagine a Constitution that limits the right to sue under the TCPA to those who are *ignorant* of their right to sue under the TCPA." *Id.* "The Constitution requires no such result." *Id.*

Furthermore, Defendant's argument that Mr. Wilson cannot serve as an adequate class representative because his cellular telephone number contains repeated digits is entirely without legal support and reflects a fundamental misunderstanding of the Rule 23 adequacy inquiry. The Ninth Circuit has repeatedly rejected efforts by defendants to manufacture supposed "unique defenses" to defeat certification. *Van v. LLR, Inc.*, 61 F.4th 1053, 1068 (9th Cir. 2023) The Rule 23 analysis focuses on the nature of the plaintiff's claim and interest in the litigation, not on a defendant's attempt to conjure hypothetical obstacles that do not arise from the plaintiff's actual conduct or circumstances. This is notwithstanding that there is no case law establishing the purported "uniqueness" of a phone number as a viable defense in a TCPA case, and for good reason: the statute does not require it. Defendant's argument is akin to a "wrong number"

defense under the TCPA, which the Ninth Circuit has established does not exist. *N.L. by Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164, 1167 (9th Cir. 2020).

Here, Defendant's "unique defense" is nothing more than an effort to distract from the central issue in this case: whether Defendant placed a prerecorded, artificial voice call to a cellular telephone without consent, in violation of the TCPA. The Complaint alleges exactly that. (ECF No. 1 ¶¶ 10–23) (stating that Plaintiff received a prerecorded, robotic voice message, that he never provided express consent, and that Defendant called the wrong person). Nothing in Rule 23 suggests that the ten-digit sequence of the telephone number to which the unlawful call was placed has any bearing on adequacy. The TCPA's protections apply equally to all assigned cellular telephone numbers. There is no judicial decision holding that numerical rarity or memorability of a phone number can render an otherwise straightforward plaintiff inadequate or atypical. To the contrary, it may be suggestive of uniformly sending calls to wrong numbers.

Defendant's argument collapses further when one examines its logic. Defendant contends that Wilson's telephone number appears online, or may have been used in the past by businesses, or may have been treated as a "dummy" number. Even if true, none of these assertions have any grounding in the Complaint, nor do they reflect any conduct by any class member reflecting on the plain claim that a pre-recorded voice call was sent to them by a company they have no relationship with. The Complaint alleges that Plaintiff "is, and has been for at least five years, the subscriber to and customary user" of his number. (ECF No. 1 ¶ 9). That allegation controls at the pleading stage and forecloses Defendant's invitation to speculate about prior subscribers. Any disagreement over whether Plaintiff's number was reassigned years ago is a merits or discovery issue and is no basis to conclude that the named plaintiff is atypical or inadequate.

Opposition to Motion to Dismiss                    18

Moreover, Defendant's theory, if accepted, would require courts to evaluate the "commonness" or "normality" of a plaintiff's telephone number, an atextual inquiry no TCPA court has ever undertaken and one that would have no limiting principle. Defendant's logic would imply that plaintiffs with "easy to remember" numbers such as those ending in 0000, 1111, 1100, or similar sequences, could never serve as class representatives. Under this theory, any consumer whose number at some point appeared in an online directory, was recycled by a wireless carrier, belonged to a business years earlier, or was assumed to be "fake" would automatically become inadequate. This would exempt wide swaths of consumers from bringing TCPA class actions and would create arbitrary barriers disconnected from the statute's purpose.

The inadequacy and typicality argument also collapses because adequacy under Rule 23 depends on Plaintiff's actions, not third parties. "Under [Rule 23's] permissive standards, representative claims are "typical" if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1238 (9th Cir. 2024). Here, Wilson seeks the same statutory damages for the same type of call, arising from the same practices, as the class. His interest is entirely coextensive with class members' interests. He alleges the same injury, receipt of a prerecorded call without consent, under the same statute. (ECF No. 1 ¶¶ 14–21, 22–23, 39–48). There is no diverging interest, conflict, or issue that would cause Wilson to litigate differently from any other class member.

In reality, Defendant's argument is nothing more than an attempt to create a "unique" issue where none exists based on internet searches and speculation. In evaluating certification, a court must conduct a substantive legal analysis of the defendant's proffered defenses, not simply accept them at face value, let alone permit them to generate adequacy "problems" from thin air. *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1184 (9th Cir. 2015) ("When defendants opposing

class certification raise a legal defense[], the district court cannot assume its validity but should make a threshold determination on the legal merits. . . . [I]f an alleged defense is invalid as a matter of law, the defense will not give rise to individual issues and thus cannot be a valid basis for denying class certification.") Here, the claim is simple: Defendant placed a prerecorded voice call to a number assigned to Plaintiff's cellular telephone service without consent, in violation of federal law. Defendant's alleged adequacy and uniqueness defenses are invalid as a matter of law. Whether a phone number ends in four, five, six or seven repeated digits, or consists of randomly assorted integers, is entirely irrelevant to whether Wilson's claims are typical of or adequate to represent the class. As the Central District of California held last month while certifying a TCPA case, "Kearns's credibility, or lack thereof, does not alone render him inadequate when, as here, the factual premise of his experience is typical of the proposed class. Perhaps, as loanDepot asserts, loanDepot will have **_stronger_** defenses against Kearns than it might against a different class member, but the nature of those defenses will not be **_different_**." *Kearns v. LoanDepot.com, LLC*, No. 8:22-CV-01217-JWH-JDE, 2025 WL 3010182, at *6 (C.D. Cal. Oct. 20, 2025) (emphasis original). Defendant's effort to deflect with *ad hominem* characterizations is misplaced. The case turns on evidence of whether Defendant's prerecorded calls violated the TCPA, not on personal attacks against a Plaintiff enforcing his statutory rights.

### CONCLUSION

Defendant's Motion to Dismiss and/or Strike invites the Court to resolve factual disputes in its favor, to rewrite the TCPA's pleading standard, and to preemptively dismantle a putative class action before any discovery has occurred. The Federal Rules and the case law do not permit that result. Plaintiff respectfully requests that the Court deny the motion or grant leave to amend as necessary.

RESPECTFULLY SUBMITTED AND DATED this November 24, 2025.

> s/Andrew Roman Perrong
> Andrew Roman Perrong, OSB No. 243320
> a@perronglaw.com
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, PA 19038
> 215-225-5529
> Lead Attorney for Plaintiff and the Proposed Class

## CERTIFICATE OF WORD COUNT

This brief complies with the applicable page-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains fewer than 35 pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel. No table of contents or table of cases and authorities is required because the brief does not exceed 20 pages.

Dated: November 24, 2025.

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

Dated: November 24, 2025                */s/ Andrew Roman Perrong*
                                         Andrew Roman Perrong, Esq.